UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

IN RE:                                    )        CASE NO. 01-52178LSEG
                                          )
FRIEDE GOLDMAN HALTER, INC.               )        CHAPTER 11
et al, Jointly Administered,              )
            Debtors                       )
                                          )

---

                                          )
                                          )
TIMCO, INC.                               )
            Plaintiff                     )
v.                                        )        ADV. PROC. NO. 04-05042 SEG
                                          )
FRIEDE GOLDMAN OFFSHORE, INC.             )
FRIEDE GOLDMAN, LTD., AND FRIEDE          )
GOLDMAN HALTER, INC.                      )
            Defendants                    )

## OPINION

The matter before the court is the motion for summary judgment filed by the Plaintiff, Timco, Inc. ("Timco") regarding the validity of an indemnity agreement with the debtor-defendants. Having considered the matter, the court concludes that the motion for summary judgment filed by Timco should be denied.

### I. FACTUAL BACKGROUND

1. A complaint for damages was filed by James A. Beck, Jr. and Allison R. Beck in May of 2000, against Friede Goldman Offshore, Inc., Friede & Goldman, Ltd., and Friede Goldman Halter, Inc. in the United States District Court for the Southern District of Alabama. James A. Beck ("Beck") was employed by Timco and was

performing electrical work on an offshore drilling rig that was on the defendants' premises in Pascagoula, Mississippi. Beck was injured when he tripped over a hose on the upper deck of the drilling rig and fell. In count one of the complaint, Beck demanded compensatory damages alleging that the injuries were caused by the defendants' negligence in failure to provide a safe workplace. In count two, damages were demanded for loss of consortium.

2. In February of 2001, the defendants filed a third party complaint in the Alabama proceeding against Timco, Inc. for contractual indemnity and breach of contract.

3. In April of 2001, Friede Goldman and affiliates filed petitions for relief under Chapter 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Mississippi.

4. On April 8, 2004, Timco filed its complaint to determine validity of indemnity agreement against Friede Goldman Offshore, Inc., Friede Goldman Ltd., and Friede Goldman Halter, Inc. as an adversary proceeding in the United States Bankruptcy Court for the Southern District of Mississippi. Timco requested judgment determining that the defense and indemnification provision contained in the Master Service Agreement entered between the parties was void and unenforceable against Timco and declaring that Timco is not required to indemnify or otherwise provide a defense for Friede Goldman in the Beck action.

5. A motion was filed by Oakridge Consulting, Inc. and Ocean Ridge Capital Advisors, L.L.C. as Liquidating Trustee for the Consolidated FGH Liquidating Trust

that was consented to by Timco requesting additional time to respond to the complaint to determine validity of indemnity agreement and an order was entered granting until May 27, 2004 to respond. A subsequent motion was filed and order entered granting until June 25, 2004 to respond to the complaint. No answer has been filed.

6. On February 25, 2005, Timco filed its motion for summary judgment regarding the validity of the indemnity agreement, along with a brief and supporting documentation and affidavit. Timco requests judgment providing declaratory relief that the indemnity agreement relied on by Friede Goldman Offshore, Inc., Friede Goldman, Ltd., and Friede Goldman Halter, Inc. is unenforceable claiming there is no substantial question of material fact and that the movant is entitled to summary judgment as a matter of law because the Master Service Agreement is unenforceable as a matter of law. The motion asserts that the Master Service Agreement pertains to construction or improving or otherwise rendering services in connection with a structure intended for use in the exploration for or production of minerals, *viz*: a fixed drill rig platform. The motion further asserts that the agreement is governed by Louisiana Law and that the indemnification claims are barred by express terms of the Louisiana Oilfield Indemnity Act, LA.R.S. 9:2780.

7. No responsive pleading, brief or other documentation has been filed in response to Timco's motion for summary judgment.

## II. CONCLUSIONS OF LAW

The court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. § 1334 and § 157. The matter before the court is a non-core proceeding under to 28 U.S.C. § 157.[1]

Timco has requested summary judgment pursuant to Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056. Rule 56 provides that, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056(c). In *Taita Chemical Co., Ltd. v. Westlake Styrene Corp.*, 246 F. 3d 377 (5th Cir. 2001) the court stated that:

> Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. At 2553; see also Fed.R.Civ.Pr. 56(c). The burden then shifts to the nonmoviong party to establish the existence of a genuine issue for trial.

*Id.* at 385. See also, *Burge v. Parish of St. Tammany*, 187 F. 3d 452 (5th Cir. 1999); *General Universal Systems, Inc. v. Lee*, 379 F. 3d 131 (5th Cir. 2004)(moving party bears initial burden of demonstrating that summary judgment is appropriate).

---

[1] There has been no objection to the court exercising jurisdiction over the non-core matter. The court considers this matter pursuant to 28 U.S.C. § 157(c).

-4-

In *Abarca v. Metropolitan Transit Authority*, 2005 WL 698096, (5th Cir. March 28, 2005), the Fifth Circuit further provided the following:

> Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court views the evidence in the light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). Summary judgment is appropriate, however, if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322-23, 106 S.Ct. 2548.

*Id.* at 2. The court in *Society of Lloyd's v. Abramson*, 2004 WL 690878 (N.D.Tex. March 29, 2004) provided the following guidance:

> If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he bears the burden of proof at trial, summary judgment is mandatory. *Celotex*, 477 U.S. at 322-24; *Washington v. Armstrong World Industries, Inc.*, 839 F. 2d 1121, 1122 (5th Cir. 1988). A motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose it violates a local rule. *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F. 3d 1277, 1279 (5th Cir. 1985). However, when the nonmovant fails to provide a response identifying the disputed issues of fact, the Court is entitled to accept the movant's description of the undisputed facts as *prima facie* evidence of its entitlement to judgment. *Eversley v. Mbank Dallas*, 843 F. 2d 172, 173-174 (5th Cir. 1999).
>
> Finally, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F. 3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise matter in which the evidence supports his or her claim." *Id.* A party may not rely upon

> "unsubstantiated assertions" as competent summary judgment evidence. *Id.*

*Id.* at 3-4. See also, *Rodriguez v. Conagra Grocery Products Co.*, 2004 WL 2085491 (N.D.Tex. 2004)(court does not have duty to sift through record to search evidence to support opposition to summary judgment); *Little v. Liquid Air Corporation,* 37 F. 3d 1069 (5th Cir. 1994)(Rule 56 mandates entry of summary judgment against a party who fails to make a showing sufficient to establish existence of element essential to that party's case and on which that party will bear burden of proof at trial); *Ward v. Dr. Pepper Bottling Company of Texas,* 1988 WL 664962 (N.D.Tex. 1998)(although court may not enter default summary judgment by virtue of failure to respond it may accept as undisputed the facts described in the motion); *Action Steel Supply, Inc. v. Dixie Pipeline, LLC,* 1999 WL 33537204 (N.D. Miss. 1999)(although court may not grant summary judgment simply because there has been no opposition to the motion, the court may accept as undisputed the movant's version of facts and grant the motion where movant made prima facie showing of entitlement to summary judgment); *Fincher v. City of Dallas,* 2002 WL 441395 (N.D.Tex. 2002)(court has no obligation to consider evidence that nonmovants do not bring forth in opposition to summary judgment motion and nonmovants are required to identify specific evidence in the record and articulate the precise manner in which that evidence supports their claim); *Wienco, Incorporated v. Katahn Associates, Incorporated,* 965 F. 2d 565 (7th Cir. 1992)(motion for summary judgment cannot be granted simply because there is no opposition, instead, court must find that construing all material

facts in the movant's favor as a result of the non-movant's defaulted filing, summary judgment is appropriate). Given that there was no response filed to Timco's motion for summary judgment, the court is entitled to accept the movant's description of the undisputed facts as *prima facie* evidence of its entitlement to judgment.

Timco claims that the indemnity provision in the Master Service Agreement is void and/or unenforceable under either Louisiana law or Mississippi law. Timco argues that because the agreement provides that any dispute is governed by Louisiana law, the provisions of the Louisiana Oilfield Indemnity Act apply and render the indemnity provisions unenforceable.

The Master Service Agreement entered between the parties provides the following, in pertinent part:

> 5. The Contractor agrees to indemnify the Company against demand or payment of any and all contributions, withholding deductions or taxes measured by the wages, salaries or other compensation paid to persons employed by the Contractor or any Subcontractor in performance of the Work, The Contractor agrees to defend, protect, indemnify and save harmless the Company from and against any and all claims, suits, loss, cost, damages or expense, including reasonable attorney's fees and court costs, arising out of injury or death of persons and/or loss of or damage to property (whether of the parties hereto, or of others), including loss of use thereof, occurring in, arising out of or in connection with the Work.
> . . .
> 8. THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF LOUISIANA. For all disputes, lawsuits or other legal proceedings arising out of this Agreement or the business relationship of the parties herein, the exclusive venue shall be Orleans Parish, Louisiana.

Master Service Agreement.

In *Verdine v. Ensco Offshore Co.*, 255 F. 3d 246 (5th Cir. 2001), the Fifth Circuit dealt with the issue of application of the Louisiana Oilfield Anti-Indemnity Act:

> [P]laintiff Jesse Verdine, a Centin employee, filed suit against Ensco for damages he received while working on the Ensco 23. Ensco filed a third-party complaint against Centin seeking defense and indemnity for Verdine's claim. Centin denied Ensco's claim for defense and indemnity based on the Louisiana Oilfield Anti-Indemnity Act. *See* La.Rev.Stat. § 9:2780. Both parties filed motions for summary judgment . . .
>
> Louisiana contract law generally "allows a principal to be indemnified against his own negligence so long as that intent is clearly expressed." *Rodrigue*, 563 So. 2d at 254. The Oilfield Anti-Indemnity Act creates a public policy exception to the general rule. *See id.* If the Act applies to the Ensco-Centin agreement, then we must conclude that the choice of law provision and the defense and indemnity clause will be void as a matter of public policy. If the Act does not apply, then the defense and indemnity provision will be enforceable under either maritime law or Louisiana contract law. We therefore limit our analysis to whether the Act applies to the parties' agreement . . .
>
> "The purpose of the legislator[sic], and thus the policy interest of the state, is to protect certain contractors, namely those in oilfields, from being forced through indemnity provisions to bear the risk of their principal's negligence." *Rodrigue*, 563 So. 2d at 254. Subsection C explains the agreements to which the Act applies:
>> The term "agreement," as it *pertains to* a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations *related to* the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing ,improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled form the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or

-8-

> an agreement to perform any portion of any such work or services of any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

La. Rev. State. Ann. § 9:270(C)(emphasis added).

The scope of the Act's application diminished as a result of this Court's ruling in *Transcontinental Gas Pipe Line Corp. v. Transportation Insurance Company*, 953 F. 2d 985 (5th Cir. 1992). In *Transcontinental*, we recognized that Subsection C requires not only that an agreement relate to the broad list of exploration, production, and transportation activities, but also that an agreement pertain to an actual well. *See id.* at 991. The opinion explained the application of Subsection C as a two-part test:

> First, there must be an agreement that "pertains to" an oil, gas or water well. If the contract does not pertain to a well, the inquiry ends. Only if we determine that the contract has the required nexus to a well may we proceed to the second step of the process, examination of the contract's involvement with "operations related to the exploration, development, production, or transportation of oil, gas, or water." . . . Therefore, if (but only if) the agreement (1) pertains to a well *and* (2) is related to exploration, development, production, or transportation of oil, gas, or water, will the Act invalidate any indemnity provision contained in or collateral to that agreement.

*Id.* at 991. The above inquiry requires a fact intensive case by case analysis. *See id.* at 994.

*Id.* at 249-51.[2]

The undisputed fact that the work performed by the Timco employee was done on a drilling rig may satisfy this second step requiring that the agreement must be related to exploration, development, production or transportion of oil, gas or water, but the court does not get this far in the analysis. The first step requires that the agreement pertain to a well. Although the court may accept the movant's

---

[2] The opinion includes a non-exclusive list of factors relevant to the analysis.

undisputed version of facts where there was no response to the motion for summary judgment, the movant has not provided the court with documentation to provide that the agreement is related to a well. The Master Service Agreement does not mention a well or specify work on a well or wells. There has been no separate purchase order or work order provided to the court to review for possible provisions therein showing that the work may pertain to a well. In *Friede Goldman Offshore Texas, L.P. v. Professional Industrial Maintenance, L.L.C.,* 275 F. 3d 43 (5th Cir. 2001), the court stated the following:

> The agreement at issue in this case does not pertain to a well. To decide whether a contract "pertains to a well," courts examine a number of factors to determine the functional nexus between the subject matter of the agreement and a particular well or wells. *See id.* at 994-95; *Broussard v. Conoco, Inc.,* 959 F. 2d 42, 44-45 (5th Cir. 1992)(adapting the *Transcontinental* factors for application in a non-pipeline case). Detailed examination of the factors is not necessary in this case because no particular well is implicated by the agreement. "[T]he pertinence required is to 'a well,' singular, not 'wells,' plural, emphasizing the direct nexus needed between the agreement and the *particular well* to which it pertains." *Transcontinental,* 953 F. 2d at 991 (emphasis added). Consistent with that interpretation of the LOAIA, this Court recently held that work on an Ensco rig in a fabrication yard pertained to a well because the rig was reserved for use on six specific wells. *Verdine v. Ensco Offshore Co.,* 255 F. 3d 246, 252-54 & n. 5 (5th Cir. 2001).
>
> In the present case, the record does not reflect that the Ensco drill rig, which was in a shipyard at the time of the accident, was designated for use on any particular well or wells, or had any other functional nexus with a particular well.

*Id.* at 43.

The court must conclude that the movant has not met its initial burden of demonstrating that summary judgment is appropriate. The motion for summary

-10-

judgment should be denied, accordingly. The court does not considered it necessary to make determinations on any other points that may have been raised by Timco.

An order will be entered consistent with these findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58. This opinion shall constitute findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

DATED this the 20th day of May, 2005

/s/ Edward R. Gaines
EDWARD R. GAINES
UNITED STATES BANKRUPTCY JUDGE


ATTORNEYS FOR TIMCO, INC.
Gregory C. Buffalow
W. Kyle Morris
MILLER, HAMILTON, SNIDER & ODOM, L.L.C.
254 State Street
Post Office Box 46
Mobile, Alabama 36601


ATTORNEYS FOR LIQUIDATING TRUSTEE FOR THE
CONSOLIDATED FGH LIQUIDATING TRUST
Douglas S. Draper
Deborah W. Fallis
Leslie A. Collins
HELLER, DRAPER, HAYDEN, PATRICK & HORN, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130